The Full Commission has reviewed this matter based on the record of the proceedings before then Deputy Commissioner Bernadine S. Ballance and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence. Having reconsidered the evidence of record the Full Commission reverses the prior Opinion and Award and enters the following Opinion and Award.
* * * * * * * * * * * *
Prior to hearing, plaintiff and defendants, North Hills, Inc. and Aetna Casualty Surety Company, entered into a Pre-Trial Agreement whereby they stipulated to a number of jurisdictional and factual issues. Defendant, Theodore Bunn, Non-insured, did not stipulate to any of the items contained in said Pre-Trial Agreement. Said Pre-Trial Agreement is incorporated by reference herein.
* * * * * * * * * * * *
The Full Commission rejects the findings of fact found by the Deputy Commissioner and enters the following:
FINDINGS OF FACT
1. Plaintiff's claim is for death benefits arising from the death of George S. Wall (hereinafter referred to as decedent) under the terms of the North Carolina Workers' Compensation Act.
2. The carrier for North Hills Properties, Inc. on the risk at the time of the death of the decedent was Aetna Casualty 
Surety Company.
3. The parties herein are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. Ms. Virginia Wall, widow of decedent George Wall, is the party who would be entitled to any workers' compensation benefits recovered from this action.
5. During late August or early September, 1993, Theodore Bunn entered into an agreement with defendant, North Hills regarding a tract of land near Cary Parkway. Pursuant to that contract Mr. Bunn's work and responsibility was to clear trees from the tract of land in question. The overall objective for Mr. Bunn was to clear the land and this was accomplished primarily by two methods, burning the wood or having it transported off the tract of land.
6. From the parties' arrangement the Full Commission finds that defendant North Hills, Inc. was the principal contractor with Mr. Theodore Bunn as subcontractor. Defendant-contractor North Hills was also the owner of the property upon which the work was being performed.
7. Mr. Bunn was paid by the acre for this job and had been doing subcontracting work for North Hills for nine years.
8. Defendant-contractor was aware that its subcontractor was burning wood and that the City of Cary required someone to be present at all times a fire was burning. Mr. Bunn in fact burned the fires overnight after clearing trees throughout the day. Decedent had been seen working on the site by an official of defendant-contractor, yet defendant-contractor maintains its position that it had no knowledge of any employees of Mr. Bunn.
9. The Full Commission finds that the testimony by defendant-contractor's employees regarding overnight burning and on whether or not they had knowledge of an employee was evasive and lacking credibility.
10. Defendant-contractor North Hills Properties, Inc. entered the contractual arrangement with Theodore Bunn without requiring Mr. Bunn, as subcontractor, to submit either an insurer's certificate or a certificate of compliance issued by the North Carolina Department of Insurance pursuant to G.S. § 97-93
and G.S. § 97-19.
11. Mr. George S. Wall, hereinafter decedent, who was Theodore Bunn's brother-in-law, was hired on occasions by Mr. Bunn to assist him in his work as subcontractor. Although Mr. Wall's primary duty was to watch the fires overnight, he also helped in clearing the tract of land by hauling loads of wood away himself or having it hauled away by friends. Mr. Bunn was aware that decedent sold some of the wood transported off the site for his own profit and had no objection to this practice.
12. Decedent was paid either $65.00 or $75.00 per night and had worked approximately twenty-four (24) nights by the time he died. Mr. Bunn's usual time of arrival in the morning was 7:00 a.m. Theodore Bunn's testimony that he did not pay decedent and that decedent watched fires in exchange for wood and without any monetary compensation is not credible in light of the substantial evidence to the contrary contained in the record.
13. As for the wood removed from the site, decedent would transport it either in smaller blocks or as larger cut logs. To transport the logs and blocks of wood from the work site decedent would drive a pick-up truck with a trailer attached. He loaded the pick-up truck with blocks of wood and the trailer with cut logs.
14. Decedent's duties as Theodore Bunn's employee included sawing some of the wood into blocks so that it could be removed in his pickup-truck. Each night he worked for Mr. Bunn decedent would saw and load enough blocks to fill the back of his truck.
15. Loading of the larger logs onto the trailer required the use of heavy equipment, specifically a bulldozer which was on the site. To accomplish this task the logs were first wrapped in a chain which was then hooked to the bulldozer. Because ordinances prevented the use of heavy equipment at night, Mr. Bunn would use the bulldozer to load the logs onto decedent's trailer in the morning, when he arrived. However, decedent was experienced in the operation of a bulldozer.
16. During the night of 28 October 1993 and into the morning of 29 October 1993 temperatures ranged on the low to mid forties with a light wind.
17. On the evening of 28 October 1993 the decedent arrived at job site. Mr. Bunn left the site sometime thereafter for the night. When Mr. Bunn arrived on 29 October 1993 at approximately 7:15 a.m., decedent was found sitting on the bulldozer with the engine running, slumped over the wheel, apparently dead of a heart attack.
18. Also, on the morning of 29 October 1993 when Mr. Bunn arrived, there were two logs already loaded into the trailer and decedent had a third log wrapped in the chain, prepared to load. Therefore, the evidence indicates that at the time of his heart attack decedent had just returned to the bulldozer having completed, for the third time, the tasks of wrapping the chain around these logs, which were fourteen to sixteen (14-16) feet long and twenty (20) inches wide as well as hooking the chain to the bulldozer and operating the bulldozer to load the logs. Additionally, on the morning in question the decedent knew that Mr. Bunn would be late in arriving and the only reasonable conclusion is that he had begun this portion of the work without Mr. Bunn's usual assistance.
19. The Cary area rescue squad was called to the scene and transported decedent to Western Wake Medical Center where he was pronounced dead at 9:14 a.m. from cardiac arrest. He was 67 years old at the time of death.
20. Decedent had a history of heart problems, including coronary bypass surgery in 1981. Decedent had experienced episodes of syncope and angina and had been treated with several medications.
21. As of 29 January 1993 decedent's cardiologist, Dr. J. Allen Whitaker, was of the opinion that decedent's angina was stable but that he remained at risk for a heart attack.
22. The Full Commission finds that by the greater weight of the medical and other evidence of record, decedent's death by heart attack on 29 October 1993 resulted from his work for defendant Theodore Bunn and defendant-contractor North Hills, Inc. and was an injury by accident within the meaning of the Workers' Compensation Act.
23. The Full Commission finds that decedent's heart attack and resulting death at work on 29 October 1993 occurred following a period of unusually high exertion. The Full Commission also finds that this period of overexertion was from work which was unusual and not normally part of decedent's routine.
24. Decedent's death by heart attack resulted from an injury by accident arising out of and in the course of his employment on 29 October 1992.
25. Due to the exceptional circumstances of this case, the Full Commission finds that none of the listed methods of computing an average weekly wage would be fair. G.S. § 97-2(6). Toward that end, the Full Commission will attempt to approximate what an hourly wage and wage over a forty (40) hour work week would have been. This method was chosen in part because of the nature of plaintiff's work which would require attendance on many consecutive days and certainly every day a fire burned on the tract of land. Based on the evidence of record the Full Commission finds that plaintiff would usually work shifts of approximately twelve (12) hours. From what is know about what decedent was paid in cash and wood, the Full Commission finds that decedent was paid $75.00 per night, giving him an hourly wage for twelve (12) hours of $6.25. A $6.25 hourly wage extended over a forty (40) hour week comes to a weekly wage of $250.00. The Full Commission finds that determining decedent's average weekly wage to have been $250.00 is fair and equitable to all parties. An average weekly wage of $250.00 yields a compensation rate of $166.75.
* * * * * * * * * * *
Based upon the foregoing findings of fact the Full Commission concludes the following:
CONCLUSIONS OF LAW
1. Defendant North Hills Properties, Inc. is the principal contractor herein and who entered a contract with Theodore Bunn for the performance of the work without requiring Mr. Bunn, as subcontractor, to submit either an insurer's certificate or a certificate of compliance issued by the North Carolina Department of Insurance pursuant to G.S. § 97-93 and G.S. § 97-19. Therefore, defendant-contractor North Hills Properties, Inc. is liable for any compensable consequences of work performed pursuant to that subcontract, irrespective of whether Theodore Bunn has regularly in service fewer than three employees and irrespective of whether an employment relationship existed within the between decedent and North Hills Properties, Inc. at the time of injury. G.S. § 97-2; G.S. § 97-19.
2. Decedent was a casual employee of defendant, Theodore Bunn, but the Full Commission concludes that the work decedent performed was in the course of the trade, business or occupation of his employer and the casual nature of the employment alone would not exclude plaintiff from benefits under the Workers' Compensation Act.
3. Due to the exceptional circumstances of this case, the Full Commission finds that none of the listed methods of computing an average weekly wage would be fair. G.S. § 97-2(6). The Full Commission concludes that the method used, by approximating an hourly wage and applying it to a forty (40) hour week, is fair and equitable to all parties, and has resulted in an average weekly wage of $250.00 which yields a compensation rate of $166.75 per week.
4. As the result of overexertion and the injury by accident on 29 October 1992, Mr. George S. Wall (decedent) died from a heart attack, entitling his widow, Ms. Virginia Wall to four-hundred (400) weeks of compensation at the rate of $166.75 per week. G.S. § 97-2(6); G.S. § 97-38; G.S. § 97-39.
5. Under the circumstances of this case the Full Commission concludes that it is in the best interest of plaintiff that compensation be paid in a single lump of $66,700.00. G.S. §97-44.
6. An attorney's fee of Twenty-five (25) percent of the compensation awarded herein is approved for counsel for plaintiff.
* * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants North Hills Properties, Inc. and Aetna Casualty and Surety Company shall pay plaintiff, Ms. Virginia Wall, widow of decedent, compensation in one lump sum payment of $66,700.00, subject to the attorney's fee hereinafter proved.
2. Defendant North Hills Properties, Inc. and Aetna Casualty and Surety Company shall pay an attorney's fee of twenty-five (25) percent of the compensation awarded herein to counsel for plaintiff. This amount shall be deducted form that amount owed to plaintiff and paid directly to counsel for plaintiff.
3. Defendants North Hills Properties, Inc. and Aetna Casualty and Surety Company shall pay the costs due this Commission.
 S/ ______________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ______________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ______________________ COY M. VANCE COMMISSIONER